**A&O SHEARMAN**

BY ECF & EMAIL

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl St.
New York, New York 10007

January 12, 2025

**Allen Overy Shearman Sterling US LLP**
599 Lexington Avenue
New York, NY 10022

| | |
|---|---|
| Tel | 212 848 4000 |
| Fax | 646 848 7179 |
| Direct line | 212 610 6326 |

david.esseks@aoshearman.com

   Re: *United States v. HDR Global Trading Ltd.*, No. 24-cr-00424 (JGK)

Dear Judge Koeltl:

  We respectfully submit this letter on behalf of our client, HDR Global Trading Limited ("HDR" or the "Company"), in response to the Government's submission dated January 11, 2025 (Dkt. 52, "Gov't Jan. 11 Mem."), submitted pursuant to the Court's order dated January 10, 2025 on the question of whether profit, and not mere revenue, is the appropriate metric for gain from the offense in this matter.

  1. Profit From U.S. Users Is The Appropriate Measure Of Gain

  As the Government recognizes, the Guidelines provide that pecuniary gain "means the additional before-tax profit to the defendant resulting from the relevant conduct of the offense. Gain can result from either additional revenue or cost savings." U.S.S.G. § 8A1.2, Application Note 3(H); *see* Gov't Sent'g Mem. at 10, ECF 18. The Government argues that the Court should disregard the first sentence of the application note, which explicitly defines pecuniary gain as "before-tax profit," and instead relies solely on the second sentence that says gain *can* result from additional revenue. (Gov't Jan. 11 Mem. at 1–2 (emphasis added)).

  While the defense agrees that case law addressing these provisions is sparse, that suggests the Court should rely on the common understanding of profit, as the drafters of the Guidelines define pecuniary gain to "mean[] the additional before-tax profit to the defendant." U.S.S.G. § 8A1.2, Application Note 3(H). A plain reading of the application note suggests that the second sentence is more applicable where there is no profit to be assessed, and hence in that event suggesting to a court that it then looks at other factors such as revenue and costs. Further, the few cases that have been identified seem to confirm that profit is the appropriate measure for

Allen Overy Shearman Sterling US LLP is a limited liability partnership organized under the laws of the State of Delaware. Allen Overy Shearman Sterling US LLP is affiliated with Allen Overy Shearman Sterling LLP, a limited liability partnership registered in England and Wales with registered number OC306763 and with its registered office at One Bishops Square, London E1 6AD. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales (SRA number 401323). The term partner is used to refer to a member of Allen Overy Shearman Sterling LLP or an employee or consultant with equivalent standing and qualifications. A list of the members of Allen Overy Shearman Sterling LLP and of the non-members who are designated as partners is open to inspection at its registered office at One Bishops Square, London E1 6AD. Allen Overy Shearman Sterling US LLP is an affiliate of Allen Overy Shearman Sterling LLP. Allen Overy Shearman Sterling LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Austin, Bangkok, Beijing, Belfast, Boston, Bratislava, Brussels, Budapest, Casablanca, Dallas, Dubai, Dublin, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Houston, Istanbul, Jakarta (associated office), Johannesburg, London, Los Angeles, Luxembourg, Madrid, Milan, Munich, New York, Paris, Perth, Prague, Riyadh, Rome, San Francisco, São Paulo, Seoul, Shanghai, Silicon Valley, Singapore, Sydney, Tokyo, Toronto, Warsaw, Washington, D.C.

determining gain.[1] *See United States v. Anchor Foods, Inc.*, No. 18-CR-0522-SJF-SIL, 2020 WL 8167426, at *7 (E.D.N.Y. May 10, 2020), report and recommendation adopted, No. 18-CR-0522-SJF-SIL, 2021 WL 135751 (E.D.N.Y. Jan. 14, 2021)(calculating profit from the offense); *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 150 (D.D.C. 2012)(noting that courts have "interpret[ed] gross gain generally as profits rather than revenues," which "appear[s] to comport with the definition of pecuniary gain in the U.S. Sentencing Guidelines" and the legislative history for 18 U.S.C. § 3571(d))(internal quotation marks and citations omitted).

2. The Company's Profit Margin Is Clear In The Record

The Government devotes more than two pages to arguing that more facts are needed to establish the Company's "additional marginal cost" associated with the revenue derived from U.S. users on the BitMEX platform. (Gov't Jan. 11 mem. at 4–5). This is incorrect. Paragraph 61 of the PSR, unobjected to by the Government, explicitly provides the Company's total revenue and net profits for 2020. (PSR ¶ 61, ECF 26). Simple division reveals the Company's profit margin was 32%. This fact has been in the record for months and cannot now be attacked by the Government as overstated.[2]

There is no need for additional detail on the Company's costs. The Company's 2020 profit margin provides a reasonable approximation of the Company's marginal profit across the relevant period. The Court should not take make the speculative inferences about this margin urged by the Government; they have no support in the record.

3. The Company Has Been Consistent That Profit Is The Appropriate Measure Of Gain

The Company's initial sentencing submission argued that "[g]ain from the offense here maps to profit from U.S. users trading on the BitMEX platform," and the Company has not deviated from this position. (HDR Sent'g Mem. at 18, ECF 15). The Company's principal argument has been that the Government failed to prove any gain from the offense beyond the $30 million that HDR's founders accepted as gain during their prosecutions. (*See* HDR Sent'g Reply at 6, ECF 22; HDR Post-*Fatico* Mem. at 40, ECF 45). The focus of the *Fatico* hearing was the

---

[1] The Government relies on *United States v. Rudaj*, No. 04 CR. 1110 (DLC), 2006 WL 1876664 (S.D.N.Y. July 5, 2006), to say that courts "have generally indicated that [18 U.S.C. § 3571(d)] refers to the total 'gross proceeds' from the offense, without suggesting that these gross proceeds should be reduced by a defendant's costs." (Gov't Jan. 11 Mem. at 2–3). *Rudaj* is a forfeiture case in which the court stated that "[t]he maximum fine is up to twice the gross profits or proceeds of the racketeering or gambling activity," citing 18 U.S.C. §§ 1955, 1963(a) in addition to 18 U.S.C. § 3571(d), and does not include any analysis of 18 U.S.C. § 3571(d). *Rudaj*, No. 04 CR. 1110 (DLC), 2006 WL 1876664, at *7.

[2] Regarding the $1.6 billion worth of crypto assets on the Company's financials, (Gov't Jan. 11 Mem. at 4), the Government is aware that this is the balance of the Insurance Fund for the BitMEX platform, which is used to ensure profitable positions are paid to users (*i.e.*, to avoid auto-deleveraging events) while losing positions have downside risk capped at the value of funds the user deposited on the platform. The balance of the Insurance Fund is published on the BitMEX website, and is not, as the Government seems to insinuate, a hidden stash of money or free for distribution. It is instead clearly accounted for on the Company's financial statements and is balanced with a corresponding liability in the financial statements to reflect its role, all as evidenced by the PSR. (PSR ¶ 60).

Government's estimate of deposits from alleged U.S. users, from which the Government would then draw a percentage of total deposits it asserted were attributable to the U.S. The Company rebutted the Government's estimation of deposits from alleged U.S. users and made clear that deposits cannot reasonably be extrapolated to revenue. Consistent with the Company's position throughout the sentencing process, the gain from the offense is the Company's profit, and therefore any revenue attributable to the offense should be discounted by 68% to reflect the Company's profit from the offense.[3]

4. Conclusion

HDR respectfully submits that the Court's calculation of gain from the offense should use profit as the base for the calculation, rather than revenue, and that the Government has proven no amounts for either revenue or gain. The Company will be ready to answer any further questions at sentencing.

Respectfully submitted,

*/s/ David Esseks*

David Esseks

Copy: Jessica Greenwood, Assistant U.S. Attorney SDNY (*via ECF & email*)
Nathan Rehn, Assistant U.S. Attorney SDNY (*via ECF & email*)

---

[3] The Government's reference to the profitability of companies in the S&P 500 is irrelevant. HDR is not arguing that an average profit margin should be applied here but is instead relying on its own financial statements and the PSR.